UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**ORIGINAL**

-------------------------------------------------------X

SHIRLEY PETION,

Plaintiff,

-against-

PLANET MOTOR CARS, INC.,
and TD AUTO FINANCE, LLC

Defendant.

-------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ JAN 3 1 2012 ★

BROOKLYN OFFICE

Index No.:

CV 12-0464

GERSHON, J.

GOLD, M.J.

COMPLAINT
AND DEMAND
FOR JURY

SUMMONS ISSUED

**AS AND FOR HER COMPLAINT,** in the above-captioned action, plaintiff

**SHIRLEY PETION** ("Plaintiff"), by and through her attorneys, SADIS & GOLDBERG

LLP, alleges as follows:

### PARTIES

1.     At all times mentioned herein, Plaintiff was and is an individual residing in the

County of Kings, 1447 Schenectady  Avenue, Brooklyn, New York 11203.

2.     Upon information and belief, at all times herein mentioned, defendant **PLANET**

**MOTOR CARS, INC.** ("Dealer"), is a New York Corporation with its principal

place of business in the County of Queens at 160-14 Hillside Avenue, Jamaica,

NY 11432.  Dealer is engaged in the business of selling and servicing new and

used motor vehicles.

3.     Upon information and belief, Defendant **TD AUTO FINANCE, LLC** ("TD") is a

Michigan corporation, and is authorized to transact business in the State of New

{00201128.DOC}

York, Kings County. TD is engaged in the business of financing and accepting assignment of automobile finance contracts.

## JURISDICTION AND VENUE

4.    Jurisdiction is premised on 15 U.S.C. § 1640(e) and 28 U.S.C. §§ 1331 and 1337.

5.    Plaintiff institutes this action for actual damages, statutory damages, attorneys' fees and costs against Dealer for violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (hereinafter "TILA") and Federal Reserve Board Regulation Z, 12 C.F.R. § 226, promulgated pursuant thereto, and for related and unrelated violations of New York General Business Law § 349.

6.    Venue in this District is proper in that the conduct complained of occurred here.

## STATUTORY FRAMEWORK
## TILA

7.    The Truth in Lending Act ("TILA") is a federal law designed to protect consumers in credit transactions by requiring clear disclosure of key terms of the lending arrangement and all costs. The statute is contained in title I of the Consumer Credit Protection Act, as amended, 15 USC §§ 1601 et seq. The regulations implementing the statute, which are known as "Regulation Z," are codified at 12 CFR Part 226. The purpose of TILA is to promote the informed use of consumer credit by requiring disclosures about its terms and cost.

8.    The retail installment contract ("RISC") is the document that a consumer receives in which the requisite TILA disclosures are to be made.

## BACKGROUND

9.    On or about May 30, 2011, Plaintiff went to Dealer to purchase a used car.
Plaintiff chose a 2008 BMW X5 (the "Vehicle").

10.   Plaintiff and Dealer agreed upon a price of $28,000 for the Vehicle, including tax.
Plaintiff was willing and able to make a down payment of $10,000.

11.   Plaintiff agreed to finance the Vehicle and was told that she would receive a rate
of 7.49% and that her monthly payments would be $631.08.

12.   After Plaintiff complained that the monthly payments would be too high for her to
manage, Dealer informed her that if she made the first four payments that her rate
would drop to 3.29% and that her monthly payment would be slashed to $319.82.

13.   On a piece of paper, Dealer wrote the numbers they had agreed to. A copy of
Dealer's notes is attached as **Exhibit A.**

14.   Plaintiff and Dealer signed a Retail Installment Sale Contract ("RISC").  When
Plaintiff saw that the RISC indicated that she was making a down payment of
$15,000, and that the cash price of the vehicle was $51,109.71 she complained to
Dealer that the RISC did not accurately reflect the deal that had been agreed to.

15.   Dealer told Plaintiff not to worry about the discrepancy in the numbers and that
the difference between what had been agreed to and what was reflected in the
RISC was only for bookkeeping purposes, was required to get her loan approved,
and that the dealer agreed she was only making a down payment of $10,000.

16.   Dealer's false reporting of the down payment caused the total vehicle price to be
further inflated by $5,000, and represents a hidden finance charge that should
have been disclosed under TILA.

17.   Dealer's false reporting of the cash price caused the total vehicle price and amount financed to be grossly inflated from $28,000 to more than $51,000, and represents a hidden finance charge that should have been disclosed under TILA. A copy of the RISC is attached as **Exhibit B**.

18.   Dealer also required that Plaintiff make a payment of $416 to be deposited with the bank. The failure to report this bank deposit payment on the RISC caused Plaintiff to not be properly credited with payments that she made for her purchase, further resulting in inaccurate disclosures in the RISC. A copy of the paper Dealer gave Plaintiff reflecting the bank deposit is attached as **Exhibit C**.

19.   The Dealer's failure to properly disclose the finance charge denied Plaintiff the opportunity to compare the offered credit terms with alternative terms that she could have obtained elsewhere.

20.   In another TILA violation, as a result of Dealer's inflation of the sales price, Plaintiff was required to pay additional sales tax based on the higher, inflated sales price.

21.   This is equally true for the Dealer's reporting of the down payment that caused Plaintiff to pay sales tax on a vehicle that was reported as $5,000 higher than it really was.

22.   Further, the additional sales tax on the Vehicle was improperly included as part of the amount financed instead of as part of the finance charge, resulting in an inaccurate disclosure of the annual percentage rate, all in violation of section 1638 of TILA.

23.  At no time, however, did Plaintiff make a down payment in the amount of
     $15,000. In fact, the only down payments Plaintiff made were $10,000 and $416.
     at the time the RISC was executed.

24.  Thus, Dealer violated TILA by falsely disclosing the amount of Plaintiff's down
     payment.

25.  After Plaintiff had made four monthly payments of $631.08 she began calling
     Dealer to know when she would receive her new payment information. After
     multiple visits and telephone calls to Dealer. Dealer finally delivered to Plaintiff a
     second RISC reflecting the monthly payment of $319.82 and the interest rate of
     3.29% that Plaintiff and Dealer had agreed to at the time of purchase. A copy of
     the second RISC is attached as **Exhibit D**.

26.  Plaintiff contacted TD bank to verify when she was supposed to begin paying the
     lower amount reflected in the RISC but TD claimed to know nothing about the
     second RISC and insisted that Plaintiff was still responsible for making monthly
     payments of $631.08.

## COUNT I
## MULTIPLE VIOLATIONS OF THE TRUTH IN LENDING ACT

27.  Plaintiff repeats the allegations set forth in paragraphs 1-26 as if fully set forth at
     length herein.

28.  At all times relevant hereto, Dealer regularly extended or offered to extend
     consumer credit for which a finance charge is or may be imposed or which, by
     written agreement, is payable in more than four installments, and is the person to
     whom the transaction which is the subject of this action is initially payable,

making Dealer a creditor within the meaning of TILA, 15 U.S.C. § 1602(f) and Regulation Z § 226.2(a)(17).

29. Plaintiff and Dealer entered into a consumer credit transaction which was memorialized in an agreement governed by the TILA, to wit, the RISC annexed as **Exhibit B**.

30. Under the transaction, Dealer failed to deliver all material disclosures required by the TILA and Regulation Z in that Dealer failed to properly and accurately disclose the amount financed in violation of Regulation Z § 226.18(b) and 15 § 1638(a)(2)(A); the finance charge in violation of Regulation Z § 226.4 and 226.18(d) and 15 U.S.C. § 1638(a)(3).

31. More particularly, upon information and belief, after the parties contracted for the sale of the Vehicle, Dealer intentionally increased the cash price of the car when preparing the RISC.

32. Consequently, the RISC inaccurately discloses the "Amount Financed" for the Vehicle.

33. Additionally, by not including the bank deposit of $416 in the RISC the RISC is inaccurate because it inaccurately discloses the Amount Financed.

34. Further, Dealer falsely disclosed that Plaintiff had made a cash down payment of only $15,000. Dealer made this disclosure with knowledge of its falsity.

35. Dealer inflated the purchase price of the vehicle, and the amount of the down payment, in order to be able to assign the installment contract for profit to another lending institution. In the absence of this conduct, the transaction would not have been approved for assignment to another lender.

36.  As a result of Dealer's inflation of the purchase price, Plaintiff was required to pay additional sales tax based on the higher, inflated purchase price.

37.  Further, the additional sales tax on the Vehicle was improperly included as part of the amount financed instead of as part of the finance charge, resulting in an inaccurate disclosure of the annual percentage rate, all in violation of section 1638 of TILA.

38.  Finally, the Dealer essentially admitted that the first RISC was false by delivering a second RISC reflecting the monthly payments and interest rate that Dealer had promised.

39.  Accordingly, Dealer has violated TILA by providing inaccurate disclosures as to the cash price, the down payment made, the amount financed, the annual percentage rate and the finance charge on the RISC for the Vehicle.

40.  Plaintiff relied on these inaccurate disclosures to her detriment.

41.  Plaintiff is therefore entitled to actual damages, statutory damages and punitive damages in an amount not to exceed $500,000.  Plaintiff is also entitled to reasonable attorneys' fees, costs and expenses.


## COUNT II
## VIOLATION OF GENERAL BUSINESS LAW § 349

42.  Plaintiff repeats the allegations set forth in paragraphs 1-41 as if fully set forth at length herein.

43.  New York General Business Law § 349 prohibits the use of deceptive or unfair practices in the conduct of any business, trade or commerce or in the furnishing of any service in New York.

44. The conduct alleged herein, and the sale and financing of vehicles is consumer-oriented conduct as it has the demonstrated potential to be repeated to other consumers.

45. Plaintiff was told that after she made her first four payments her rate would drop from 7.49% to 3.29%, and that her monthly payments would be slashed from $631.08 to $319.82.

46. Plaintiff and dealer agreed to a purchase price of $28,000 for the Vehicle.

47. Instead, Dealer charged Plaintiff a grossly inflated price and provided a false RISC.

48. Dealer's actions and practices were misleading in a material respect in that it charged Plaintiff in excess of the amounts it had agreed and then refused to modify the RISC as it had agreed.

49. Plaintiff hereby demands that all attorneys' fees, costs and other fees of this action be borne by both Dealer and TD and that the Court award Plaintiff her actual damages, as well as punitive damages in an amount to be determined at trial.

## COUNT III
## LIABILITY OF TD AUTO FINANCE, LLC

50. Plaintiff incorporates paragraphs 1-49 above by reference herein. This Count is brought against Defendant TD only.

51. Federal Law (16 C.F.R. part 433) provides all retail installment contracts contain the following provision:

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER**

**OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

52.    TD is the holder of the consumer credit contract memorialized by the RISC for the purchase of Plaintiff's Vehicle.  TD is bound by the terms quoted in Paragraph 48 above, subjecting it to all claims and defenses which Plaintiff has asserted against Dealer.

53.    The Vehicle constitutes the "good" obtained with the proceeds of the RISC.

54.    Dealer and TD sold the Vehicle which constitutes the good obtained with the proceeds of the loan.

55.    Consequently, TD is subject to all claims and defenses that Plaintiff could assert against Dealer.

**WHEREFORE,** Plaintiff, **SHIRLEY PET**ION, prays for judgment against Dealer and Honda for violations of the Truth In Lending Act, violations of New York General Business Law §349,  including a refund of the purchase price plus all finance charges, pre-judgment interest, incidental and consequential damages, punitive damages and attorney fees as follows:

A. Return of all finance charges and interest;

B. All incidental and consequential damages incurred by Plaintiff;

C. Return of all charges over and above the costs of the vehicle

as agreed to in the buyer's order, and prejudgment interest at

the statutory rate from the date this cause of action accrued;

D. All reasonable attorneys' fees, witness fees, and all court costs

and other fees incurred by the Plaintiff;

E. An award of punitive damages against Dealer and TD by virtue

of their fraudulent conduct; and

F. Such other and further relief that the Court deems just and

proper.

DATED:   New York, New York
           January 26, 2011

                                                  Douglas Hirsch, Esq.
                                                  David M. Kasell, Esq. (DK-7753)
                                                  SADIS & GOLDBERG LLP
                                                    Attorneys for Plaintiff
                                                  551 Fifth Avenue, 21st Floor
                                                  New York, NY 10176
                                                  (212) 947-3793

$15000
4 Pay .$681.14

$319.00 29      5 YRS

1000 more miles

$ 160000 mile

Brakes, Rotters

Finace
5 yrs

$319 × 66

319.29
× 66
21,073

7. percent

8.29

21 073
10 000
―――――――
31,073.00
2524.56
―――――――
33,597 56

$28000 ─

= 4 payments  Charge  to  Liabilitys

= 5 days Photo Inspection

($15000 Cash)

60 Dealers Responsible

BMW will send you service
CARD like "Credit CARD" within
fifty days.
if not Received by then call
Dealer or Come see JAY
TORRES  718 915 3588
Financial OFFICER

2,207.98 Tax
Return
―――――――

* 15 day after 4 Pay
Liability From Geico

**Buyer and Co-Buyer Name and Address (Including County and Zip Code)**
SHIRLEY PERON
447 SCHONECTADY ST
BROOKLYN NY NY 11203

**Creditor-Seller Name and Address**
PIERRE MOTOR CAR
160-14 Hillside Avenue
Jamaica NY 11432

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| 7.49 % | $ 9,041.05 | $ 36,396.71 | $ 45,437.76 | $ 60,437.76 |

### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 631.08 | Monthly beginning 07/14/2011 |

### ITEMIZATION OF AMOUNT FINANCED

Cash Price (including $ 4,168.23 sales tax) ... $ 51,409.71

G. Government Certificate of Title Fees ... $ 37.00
H. Government Waste Tire Management Fee ... $ 40.00

Doc Fee ... $ 175.00

Amount Financed ... $ 36,396.71

THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE.

Case 1:12-cv-09494-LGS Document 1 Filed 01/03/13 Page 15 of 20 Page ID #: 15

ITEMIZATION OF AMOUNT FINANCED

OPTION: ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before _____. Year _____. SELLER'S INITIALS _____

**NO COOLING OFF PERIOD.** State law does not provide for any cooling off or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.
Buyer Signs X _____
Co-Buyer Signs X _____

See back for other important agreements.

**NOTICE TO BUYER: 1.** Do not sign this agreement before you read it or if it contains any blank space. **2.** You are entitled to a completely filled-in copy of the agreement. **3.** Under the law, you have a right to pay off in advance the full amount due ...

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

**RETAIL INSTALLMENT CONTRACT.**

Buyer Signs X _____
Co-Buyer Signs X _____

Seller assigns its interest in this contract to **Chrysler Financial SA LLC** (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse   ☐ Assigned without recourse   ☐ Assigned with limited recourse

Seller _____   By _____

LAW FORM NO. 553-NY

CUSTOMER / TRUTH IN LENDING COPY

**EXHIBIT C**

Case 1:12-cv-00464-MG-SMG Document 1 Filed 01/31/12 Page 17 of 20 PageID #: 17

| RESIDENCE PHONE | | BUSINESS PHONE | | SALESMAN | |
|---|---|---|---|---|---|
| PLEASE ENTER MY ORDER FOR ONE: ☐ NEW ☐ USED | | | | COLOR | |
| MODEL | BODY STYLE | | | MODEL NO. | STOCK NO. |

USED VEHICLE DISCLOSURE STATEMENT: THE INFORMATION BUYER SEES ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

IMPORTANT: NOTICE TO USED CAR BUYER
(a) STATE LAW REQUIRES THAT SELLERS OF SECOND HAND CARS CERTIFY, IN WRITING, TO THE BUYER THAT EACH CAR IS IN SAFE CONDITION AT THE TIME OF SALE.
(b) THIS CERTIFICATION IS A GUARANTEE THAT THE CAR IS IN SAFE CONDITION AT THE TIME OF SALE.
(c) BUYER HAS A RIGHT TO REQUEST THE DEALER TO REPAIR, OR TO PAY, IN FULL, FOR REPAIRS OF ANY UNSAFE CONDITION IN THE CAR WHICH DOES NOT COMPLY WITH THIS CERTIFICATION.
(d) THIS BUSINESS IS LICENSED BY THE DEPARTMENT OF CONSUMER AFFAIRS, 42 BROADWAY STREET, NEW YORK, NEW YORK, 10004, COMPLAINT PHONE: 311, NYC, DCA LIC # 0981042

BUYER'S NOTICE ON TRADE-IN VEHICLE'S VALUE:
IF, UNDER THE LAW OF THE STATE OF NEW YORK CONTROLLING THE SALE OF USED MOTOR VEHICLES, BUYER SHOULD BE ENTITLED TO A REFUND IN CONNECTION WITH THIS TRANSACTION, THE VALUE OF ANY VEHICLE BUYER MAY HAVE TRADED-IN (IF THE SELLER CHOOSES NOT TO RETURN IT TO BUYER) SHALL NOT BE THE VALUE LISTED IN THIS DOCUMENT INSTEAD. THE VALUE WILL BE DETERMINED, BASED ON THE NATIONAL AUTO DEALERS ASSOCIATION (USED CAR GUIDES) WHOLESALE VALUE (OR OTHER GUIDE) APPROVED BY THE COMMISSIONER OF MOTOR VEHICLES, AND ADJUSTED FOR MILEAGE, IMPROVEMENTS AND ANY MAJOR PHYSICAL OR MECHANICAL DEFECTS.

FILL OUT THIS SECTION IF USED CAR IS TRADED IN

| MAKE | | YEAR | |
|---|---|---|---|
| BODY TYPE | | | |
| SERIAL NO. | | | |
| BAL OWED TO? | | | |

| Estimated Delivery Date | | Place of Delivery | |
|---|---|---|---|
IF the new motor vehicle has not been delivered in accordance with this contract within 30 days following the estimated delivery date, the consumer has the right to cancel the contract and to receive a full refund, unless the delay in delivery is attributable to the consumer.

THE DEALER APPLICATION PROCESSING FEE IS NOT A NEW YORK STATE OR DEPARTMENT OF MOTOR VEHICLES FEE, UNLESS A LIEN IS BEING RECORDED OR THE DEALER ISSUED NUMBER PLATES, YOU MAY AVOID THIS FEE BY SUBMITTING YOUR OWN APPLICATION FOR REGISTRATION AND/OR CERTIFICATE OF TITLE TO ANY MOTOR VEHICLE ISSUING OFFICE.

THE AMOUNT INDICATED ON THIS SALES CONTRACT OR LEASE AGREEMENT FOR REGISTRATION AND TITLE FEES IS AN ESTIMATE. IN SOME INSTANCES, IT MAY EXCEED THE ACTUAL FEES DUE. THE COMMISSIONER OF MOTOR VEHICLES. THE DEALER WILL AUTOMATICALLY, AND WITHIN SIXTY DAYS OF SECURING SUCH REGISTRATION AND TITLE, REFUND ANY AMOUNT OVERPAID FOR SUCH FEES.

| CUSTOMER'S INITIALS | | DATE | |
|---|---|---|---|
| VIN | | UNIT PRICE | $ |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTAL UNIT PRICE | | | $ |
| LESS TRADE-IN ALLOWANCE | | | |

| PRE-TRADE | | SUB-TOTAL | |
|---|---|---|---|
| ACTUAL CASH VALUE | | SALES TAX | |

Buyer/lessee has requested passenger registration and will not use this vehicle for commercial purposes or add lettering or advertising to this vehicle.

If this motor vehicle is classified as a used motor vehicle, PLANET MOTOR CARS, INC. the dealer named above certifies that the entire vehicle is in condition and repair to render under normal use, satisfactory and adequate service upon the public highway, at the time of delivery. CERTIFICATE OF TITLE $20.00. THE DEALER APPLICATION PROCESSING FEE IS NOT A NEW YORK STATE DEPARTMENT OF MOTOR VEHICLES FEE, UNLESS A LIEN IS BEING RECORDED OR THE DEALER ISSUED NUMBER PLATES, YOU MAY AVOID THIS FEE BY SUBMITTING YOUR OWN APPLICATION FOR REGISTRATION AND/OR CERTIFICATE OF TITLE TO ANY MOTOR VEHICLE ISSUING OFFICE.

| PREP | | |
|---|---|---|
| REGISTRATION FEE (ESTIMATE) | | |
| DESTINATION | | |
| N.Y. STATE INSPECTION USED | | |
| DEALERS OPTIONAL FEE FOR PROCESSING REGISTRATION AND/OR CERTIFICATE OF TITLE # $75.00 | | |

SIGNATURE X

## ALL BALANCES MUST BE PAID IN CASH, CASHIERS OR CERTIFIED CHECK ONLY.

I agree that this Contract includes all of the terms and conditions on both the face and the reverse side hereof. This Contract is not binding unless signed by you or your authorized manager. (New plates will not be obtained until vehicle is paid in full.)
I CERTIFY I HAVE NOT SIGNED ANY BLANK FORMS. I ALSO CERTIFY THAT I AM OF LEGAL AGE TO EXECUTE THIS CONTRACT.
10% MINIMUM DEPOSIT DESIRED WITH ALL CONTRACTS. I acknowledge that my signature on this Contract that I have read its terms and conditions and that I have received a completed copy of this Contract. ALL DEPOSITS RECEIVED BY CHECK OR CASH WILL NOT BE REFUNDED BEFORE 30 DAYS FROM DATE OF REQUEST. REFUNDS WILL ONLY BE MAILED IN CHECK FORM AND CANNOT BE PICKED UP.

| TOTAL CASH PRICE DELIVERED | | $ | |
|---|---|---|---|
| LESS ☐ CASH ☐ CERTIFIED CHECK | | | |
| DEPOSIT | | | |
| ☐ CHECK CHECK NO. | | | |
| ☐ VISA ☐ MC ☐ AM EXP. | | | |
| PLUS BALANCE OWING ON TRADE-IN | | | |
| FINANCED AMOUNT X MOS. | | | |
| ADD'L DEP. | | | |
| ADD'L DEP. | | | |
| C.O.D. | | | |

| BUYERS SIGNATURE | | DATE | |
|---|---|---|---|
| ACCEPTED BY: | DEALER OR HIS AUTHORIZED MANAGER | N.Y.S. DLR. LIC. NO. 0981042 Facility #.7080467 | |

*After The Sale It's The Service That Counts!*

SOURCE

Exhibit D

RETAIL INSTALLMENT CONTRACT

FINANCE CHARGE

Buyer (and Co-Buyer) Name and Address (Including County and Zip Code)

SHIRLEY PERON
1447 SCHONECTADY ST
BROOKLYN, NY 11203

Creditor-Seller (Name and Address)

Planit Motor Cars
160-14 Hillside Avenue
Jamaica, NY 11432

| Year | Make and Model | Vehicle Identification Number | | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED 2006 | BMW | BUXFR35483ZB8696 | | ☑ Personal, family or household use |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ 4,000.00 |
|---|---|---|---|---|
| 3.79 % | $ 6,792.97 | $ 36,210.78 | $ 21,109.12 | $ 21,109.12 |

Your Payment Schedule Will Be as follows:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 66 | $ 318.82 | Monthly beginning 12/24/2011 |

ITEMIZATION OF AMOUNT FINANCED

1 Cash Price (including $ _____ sales tax) $ 2,928.75

2 Total Downpayment

5 Amount Financed (3 + 4) $ 36,210.78

GUARANTEE SELL

ITEMIZATION OF AMOUNT FINANCED

| | N/A | | |
|---|---|---|---|
| | N/A | | |
| | 0.00 | | |
| | 0.00 | | |
| | N/A | | |

Life ........................................... N/A
Disability .................................. N/A
Vendor's Single Interest Insurance ... N/A
Being Paid to Insurance Company ..... N/A
Other Insurance Paid to Insurance Company N/A
Fee Paid to Government Agencies .... N/A

| | N/A |
|---|---|
| | N/A |
| | N/A |
| | N/A |
| | 175.00 |

G. Government Certificate of Title Fees ..... 37.00
H. Government Waste Tire Management Fees ... 0.00

Other Charges (Seller must identify who is paid and describe purpose):

I. To for Prior Credit or Lease Balance ...... 0.00

To Dan Fee ................................. 75.00
To ........................................... N/A
To ........................................... N/A
To ........................................... N/A

Total Other Charges and Amounts Paid to Others on Your Behalf

5. Amount Financed (3 + 4) ......... $36,215.76

6. Using Our Buyer's Guide. This information you see in written form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract.

THERE IS NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.    Buyer Signs X _____    Co-Buyer Signs X _____

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

See back for other important agreements.

NOTICE TO BUYER: 1. Do not sign this agreement before you read it or if it contains any blank space. 2. You are entitled to a completely filled-in copy of the agreement. 3. Under the law, you have a right to pay off in advance the full amount due and to obtain a partial refund of the finance charge. 4. According to law, you have the privilege of purchasing the insurance on the motor vehicle provided in this contract from an agent or broker of your own selection.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

RETAIL INSTALLMENT CONTRACT

Buyer Signs X _____    Date _____    Co-Buyer Signs X _____    Date _____

Other owner _____

Seller signs _____    Date _____    By _____    Title _____

Seller assigns its interest in this contract to _____ (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse.    ☐ Assigned without recourse.    ☐ Assigned with limited recourse.

Seller _____    By _____    Title _____

LAW FORM NO. 553-NY (REV 6/08 U.S. PATENT NO. 04/02 741)